UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Jerry Gillespie, | |
| Plaintiff, | No. 1:24-CV-08019 |
| v. | Judge Edmond E. Chang |
| Kenneth Boudreau, John Halloran, James O'Brien, Michael Clancy, Sergio Rajkovich, Daniel McDonald, Thomas Richardson, Robert Schaefer, Geri Yanow, as Independent Administrator of the Estate of William Foley, David Evans, John McHugh, Assistant State's Attorney Julie Nelson, Assistant State's Attorney Charles Burns, City of Chicago, Cook County, and Cook County State's Attorney's Office, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

In 1994, Jerry Gillespie was convicted of murdering Jeffrey Rodgers. R. 1, Compl. ¶ 4.[1] For that conviction, Gillespie spent 20 years in prison—but years after he was released from prison, his conviction was vacated. *Id.* ¶¶ 1, 5. He then obtained a certificate of innocence from the state court. *Id.* ¶ 5.

Gillespie now alleges that his wrongful incarceration resulted from the misconduct of investigating officers. Compl. ¶ 2. He sues the City of Chicago, nearly a dozen of the City's former police officers, a former Chicago police detective, Cook

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

County, the Cook County State's Attorney's Office, and two former Cook County Assistant State's Attorneys. *Id.* ¶ 11–15. Gillespie alleges that the Defendants tortured him to coerce a false confession, suppressed several witnesses' exculpatory information, and caused several other witnesses to provide false inculpatory statements. *Id.* ¶¶ 25–56. Based on these allegations, Gillespie advances a variety of claims, including violations of his rights under the Fourth, Fifth, and Fourteenth Amendments, 42 U.S.C. § 1983; conspiracy to deprive him of his constitutional rights, 42 U.S.C. §§ 1983, 1985, 1986; municipal liability for the City's practices and customs that encouraged unconstitutional conduct, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); and related state law claims.[2] Compl. ¶¶ 97–165.

Now, the two former state prosecutors—Charles Burns and Julie Nelson—move to dismiss certain aspects of the Complaint. R. 53, Burns's Mot.; R. 69, Nelson's Mot. As explained below, Burns's motion is granted, and the claims against him are dismissed without prejudice to Gillespie filing an amended complaint. Nelson's motion, however, is denied.

## I. Background

The Court accepts all well-pleaded factual allegations in the Complaint as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), and sets forth here only those that are needed to decide the dismissal

---

[2]This Court has subject matter jurisdiction over the federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

2

motions. In 1993, Gillespie was stopped by several police officers in connection to the investigation of three unsolved murders. Compl. ¶¶ 20, 22. Gillespie alleges that the officers took him to a police station, and then they would not allow him to leave, instead interrogating him "multiple times," lying to him, and subjecting him to intimidation and physical abuse. *Id.* ¶¶ 23–28. Officers falsely told him that he had been implicated by someone else, and the officers then deceptively promised Gillespie leniency and "fed him false information about the crime." *Id.* ¶¶ 29–33. All the while, officers did not allow Gillespie to eat, drink, sleep, or use the restroom. *Id.* ¶ 34.

Gillespie later told state prosecutor Nelson about the threats and abuse, but Nelson allegedly ignored him, causing Gillespie to feel like he had no choice but to cooperate and to confess. Compl. ¶ 35–38. Nelson also allegedly fabricated a statement, purportedly made by Gillespie, stating that the police did not mistreat him. *Id.* ¶ 39.

The officers also interviewed other witnesses. Compl. ¶¶ 43–55. After the officers interviewed two particular witnesses, state prosecutor Burns and one officer re-interviewed them. *Id.* ¶¶ 51–54. Gillespie alleges that Burns coerced a false, inculpatory statement from Willie Hughes and that Burns suppressed an exculpatory statement from James Clark. *Id.*

Gillespie was eventually convicted of first-degree murder in 1994. Compl. ¶ 58. After his conviction was vacated in 2024 and he obtained a certificate of innocence, *id.* ¶¶ 59–60, Gillespie filed this suit. He alleges that Burns and Nelson were part of a conspiracy to deprive him of his constitutional rights, and he adds that Burns and

3

rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

#### A. Charles Burns

The Court begins with Burns's invocation of absolute immunity. In Burns's view, the allegations against him do not make clear whether Gillespie believes that Burns fabricated inculpatory evidence and suppressed exculpatory evidence in an investigatory or—in contrast—a prosecutorial role. Burns's Mot. at 5–7. The parties agree that Burns would be absolutely immune from liability only if he performed those acts as part of the prosecutorial function. *Id.* at 5; R. 70, Pl.'s Resp. to Burns at 3; *see Buckley v. Fitzsimmons*, 509 U.S. 259, 269–71 (1993).

5

Gillespie could have said more in his complaint, but drawing all reasonable inferences in his favor as required at the pleading stage, *Iqbal*, 556 U.S. at 678, he has pleaded enough to avoid any absolute-immunity bar. Gillespie has plausibly alleged that when the prosecutors and police officers were investigating the murder of Jeffrey Rodgers (before they were prepared to charge Gillespie), Burns fabricated inculpatory statements and withheld exculpatory information. Compl. ¶¶ 51–54. "[A] showing that a prosecutor investigated and fabricated evidence … would automatically defeat absolute prosecutorial immunity." *Lewis v. Mills*, 677 F.3d 324, 331 (7th Cir. 2012). Likewise, Gillespie's claim that Burns suppressed an exculpatory statement to implicate Gillespie in the murder also plausibly alleges that the suppression happened while the government was still investigating the murder. Compl. ¶¶ 53–54. Burns may, of course, renew his claim of absolute immunity later if discovery reveals that the alleged misconduct happened at a later stage of the criminal process when Burns was performing prosecutorial functions. But at the pleading stage, Burns has not met his burden to avail himself of absolute prosecutorial immunity. *See Burns v. Reed*, 500 U.S. 478, 486 (1991) ("[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question.").

Burns next argues that Gillespie fails to adequately allege how Burns violated any of Gillespie's constitutional rights. Burns's Mot. at 7–10. The Court agrees that the Complaint falls short in this regard. The purpose of plausibility in pleading is to give a defendant "fair notice of what the claim is *and the grounds upon which it rests*."

6

*Twombly*, 550 U.S. at 555 (emphasis added) (cleaned up). Factual allegations need not be "detailed," but they do need to be "more than labels and conclusions." *Id.*

Beyond the bare allegations that Burns coerced a false, inculpatory statement from Hughes and suppressed an exculpatory statement from Clark, there is nothing in the Complaint that concretely describes what misconduct allegedly happened. *See* Compl. ¶¶ 51–54. Although factual allegations need not be that much more detailed, something more is needed. For example, without concrete factual allegations, it is difficult to discern even the rough *content* of the exculpatory statement made by Clark. Without knowing something about the content of the exculpatory statement, it is not possible to assess plausibility. To illustrate the point, consider if the purported exculpatory statement of a witness was, "A Martian landed on Earth, shape-shifted to look like Gillespie, and committed the murder." Burns's non-disclosure of that statement would not make out a plausible *Brady* claim. Similarly, on the current allegations, it is not possible to accurately determine whether the false, inculpatory statement allegedly made by Hughes was introduced at trial, either through his own testimony or improperly by some other means. All of this impairs the Court's ability to assess plausibility, which is not possible to evaluate at this sky-high level of generality. *Cf. Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022) (noting that allegations at a high level of generality fail to make contention plausible). Gillespie's claims against Burns thus are dismissed. But Gillespie may amend his complaint to provide more specificity so that his claims rise above mere labels.

Because Gillespie's lone claims against Burns involve the nondescript inculpatory and exculpatory statements[4]—which have been dismissed for now—the Court does not address Burns's remaining arguments. *See* Burns's Mot. at 10–14. First, the dismissal of Gillespie's allegations of constitutional violations means that there are no underlying violations as required to support the conspiracy claim. *See Gilbank v. Wood Cnty. Dep't of Hum. Servs.*, 111 F.4th 754, 789 (7th Cir. 2024) (en banc). Second, the Court need not assess the viability of Burns's invocation of qualified immunity in response to any claims specific to him. And third, because the Court dismisses without prejudice Gillespie's claims against Burns, there currently is no need to address Burns's assertion that this Court should relinquish supplemental jurisdiction over the state law claims against him. If Gillespie amends his complaint and Burns moves again to dismiss the claims against him while re-raising these arguments, then the Court will address the merits of those arguments at that time (and if the dismissal is with prejudice, the Court would then consider whether to relinquish supplemental jurisdiction).

### B. Julie Nelson

Nelson contends that even if Gillespie plausibly alleges specific unconstitutional acts that she committed, he fails to adequately allege that she participated in a civil-rights conspiracy. Nelson's Mot. at 6–7. The argument is rejected, given the

---

[4]The Court notes that, under Count 1, Gillespie alleges that Burns "failed to intervene to stop Plaintiff's wrongful prosecution and conviction." Compl. ¶ 101. But without more information, the Court does not treat that statement as a factual allegation separate from those about the Hughes and Clark statements.

8

nature and specificity of the allegations against Nelson. As Nelson concedes, a plaintiff pleads enough if they "indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002); *see* Nelson's Mot. at 6. Here, Gillespie has done that: in 1993 (approximate date), Nelson and other investigating officers (the parties) worked together to coerce his false confession and then omit information about any improper tactics used (general purpose). Compl. ¶¶ 22, 25–42. Unlike with Burns, an allegation like that plainly puts Nelson on notice of the coerced statement—it was a confession—and on notice of her role in the alleged misconduct.

Nelson also argues that she is entitled to qualified immunity on Gillespie's claim that she failed to intervene in his wrongful prosecution. Nelson's Mot. at 4–6; Compl. ¶¶ 101, 106. Nelson would be entitled to qualified immunity if she did not violate a constitutional right that was clearly established, meaning that the right was "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (cleaned up). Nelson does not contend that Gillespie fails to plausibly allege that the failure to intervene violated his constitutional rights; she argues only that the right was not clearly established in 1993 when she and others investigated Gillespie. Nelson's Mot. at 4–5.

To assess the competing arguments, it is worth setting out the legal landscape surrounding this claim. The parties agree that a key case, *Whitlock v. Brueggemann*, 682 F.3d 567, 580–81 (7th Cir. 2012), reaffirmed the proposition that "police and

9

investigating prosecutors are subject to the same constraints," and rejected the prosecutor's assertion of qualified immunity. Nelson's Mot. at 5; R. 75, Pl.'s Resp. to Nelson at 7. Because police officers have had a clearly established duty (at least in this circuit) to "stop other officers" from violating constitutional rights since at least 1972, *see Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972),[5] courts in this district have recognized that the duty to intervene against constitutional violations has been clearly established as to prosecutors after the issuance of *Whitlock, e.g., Sherwood v. Village of Fox Lake*, 2024 WL 2209697, at *4 n.5 (N.D. Ill. May 15, 2024).

But the parties disagree about how to apply those general propositions when asked whether it was clearly established in 1993 that prosecutors had a duty to intervene. Nelson, for example, cites several cases in this district acknowledging *Whitlock*'s import but granting qualified immunity because the events in those cases predated the date of decision in *Whitlock*, 2012. Nelson's Mot. at 5 (citing *Bouto v. Guevara*, 2024 WL 4346561, at *11 (N.D. Ill. Sep. 30, 2024) ("But this decision is from 2012 …."); *Serrano v. Guevara*, 315 F. Supp. 3d 1026, 1039 (N.D. Ill. 2018) (same); *Gecht v. Guevara*, 2024 WL 4299982, at *4 (N.D. Ill. Sep. 26, 2024) (same)); *see also*

---

[5]It is worth noting that the intervention duty set forth in *Byrd* was described by *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994), as the "seminal case in this circuit on the duty of an officer to intervene to prevent summary punishment." *Yang* also explained that although most rights established by the Constitution are *bans* against government action, some constitutional rights also encompass the duty to "intervene," *id.*, and went on to cite a variety of cases in which the duty arose, including a false-arrest case, *Gagnon v. Ball*, 696 F.2d 17, 21 (2d Cir. 1982) (officer liable for failing to intervene in false arrest). So the duty to intervene has been long established as to false-arrest cases, and not only to preventing excessive force. Indeed, prosecutors are uniquely positioned to intervene to prevent police officers from using coerced confessions in violation of due process, and as explained in the text below, any reasonable prosecutor would know that they cannot knowingly rely on a coerced confession.

10

*Abrego v. Guevara*, 2024 WL 3566679, at *11 (N.D. Ill. July 29, 2024) (same); *Ezell v. City of Chicago*, 2024 WL 278829, at *14 (N.D. Ill. Jan 24, 2024) (same); *Wilson v. Est. of Burge*, 667 F. Supp. 3d 785, 834 (N.D. Ill. 2023) (same); *Brown v. City of Chicago*, 633 F. Supp. 3d 1122, 1155 (N.D. Ill. 2022) (same); *but see Fulton v. Bartik*, 2024 WL 1242637, at *10 (N.D. Ill. Mar. 22, 2024) (holding that duty to intervene was clearly established before 2012). Gillespie responds that by 1993 it was clearly established that prosecutors performing investigatory functions were held to the same standards of liability as police officers. Pl.'s Resp. to Nelson at 6–8.

*Whitlock* itself contains the answer to the question. In *Whitlock*, the Seventh Circuit confronted the question of "whether the right to due process that the plaintiffs claim was clearly established before *February 19, 1987*" and concluded that the district court correctly denied qualified immunity because it was clearly established—as of 1987—that prosecutors violate the Constitution when they fabricate evidence introduced at trial. 682 F.3d at 585–86 (emphasis added); *see also Smith v. Finkley*, 10 F.4th 725, 737 (7th Cir. 2021) (asking "whether the federal right at issue was clearly established at the time of the alleged violation"). *Whitlock* thus held that the right at issue was clearly established as of 1987—well before 2012, when the opinion was issued. So Gillespie (whose interrogations and prosecution began in 1993) may invoke the principles in *Whitlock*.

The question remains, however, whether *Whitlock* (or another case) clearly establishes that in 1993 an investigating prosecutor had a duty to intervene to prevent unconstitutional investigatory conduct. Although the facts of *Whitlock* date to 1987,

11

the case itself raised the qualified-immunity defense in the context of "[a] prosecutor who *manufactures evidence* when acting in an investigatory role." 682 F.3d at 580 (emphasis added). Denying qualified immunity here thus requires the synthesis of two different principles: (1) that it was clearly established that police officers can be liable for failing to intervene, *see Byrd*, 466 F.2d at 11; and (2) that it was clearly established that prosecutors performing investigatory acts should be no less liable than police officers, *see, e.g.*, *Whitlock*, 682 F.3d at 580; *Burns*, 500 U.S. at 495.

Synthesis is appropriate here.[6] "[G]eneral statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 740–41 (2002) (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)) (cleaned up). Applying the rule in *Byrd*—that police officers must intervene to prevent constitutional violations—to prosecutors who perform investigatory functions thus is more than "suggested by then-existing precedent," *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018), and instead suffices to give "fair warning" to Nelson, *Hope*, 536 U.S. at 740 (cleaned up).

---

[6]Indeed, Nelson does not reject *Whitlock*'s conclusion that it was clearly established that prosecutors performing investigatory functions had a duty to intervene. She instead acknowledges that a prosecutor does have such a duty—but *after* the opinion was issued. *See* R. 79, Nelson's Reply at 2 (citing *Harris v. City of Chicago*, 2015 WL 5445012, at *4 (N.D. Ill. Sep. 15, 2015) ("[P]ost-*Whitlock*, a prosecutor acting as an investigator can be held liable for failing to intervene.")). In any event, because qualified immunity presents a question of law, *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985), the Court must evaluate the issue without giving dispositive weight to Nelson's concession.

The outcome is no different just because applying *Byrd* relies on a corresponding application of the separate (but clearly established) principle that "[i]t would be incongruous to hold a police officer liable … for taking the same action in the same capacity." *Whitlock*, 682 F.3d at 580–81 (citing *Burns*, 500 U.S. at 495) (cleaned up); *cf. City and County of San Francisco v. Sheehan*, 575 U.S. 600, 615–16 (2015) (viewing three separate precedential decisions together before granting qualified immunity because combination of three was not enough "[n]o matter how carefully a reasonable officer" read them); *Lane v. Franks*, 573 U.S. 228, 245 (2014) (identifying three cases to "represent the landscape … for qualified immunity purposes" before granting qualified immunity based on combination of three because third-in-time case did not clearly establish the right). The Court thus concludes that in 1993 it was clearly established that Nelson had a duty to intervene to prevent the prosecution of Gillespie based on a confession obtained by torture.

13

## IV. Conclusion

Burns's motion to dismiss, R. 53, is granted, and he is dismissed without prejudice from the suit. Gillespie may amend his complaint to re-plead facts against Burns, if he can do so consistent with Civil Rule 11(b). Gillespie's amended complaint, if any, is due by October 15, 2025. Nelson's motion to dismiss, R. 69, is denied.

ENTERED:

                                                      s/Edmond E. Chang
                                      Honorable Edmond E. Chang
                                      United States District Judge

DATE: September 29, 2025