IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JERRY GILLESPIE, | ) | |
| | ) | Case No. 24-cv-8019 |
| Plaintiff, | ) | |
| v. | ) | District Judge Edmond E. Chang |
| | ) | |
| KENNETH BOUDREAU, et al., | ) | Magistrate Judge Jeannice W. Appenteng |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is plaintiff's renewed motion for protective order to bar subpoena requests issued by defendants Charles Burns and Julie Nelson. Dkt. 148. For the reasons below, the Court grants the motion.

### I. Background

Plaintiff Jerry Gillespie sued police officers and attorneys involved in his 1994 murder conviction after the conviction was vacated and plaintiff received a certificate of innocence. Plaintiff alleges the officer defendants arrested him without probable cause and coerced his false confession, and he alleges former Assistant Cook County State's Attorneys Charles Burns and Julie Nelson ("ASA defendants") facilitated the false confession and fabricated evidence to secure a conviction. Plaintiff's lawsuit also alleges the City of Chicago is liable for having unconstitutional policies and failing to train and discipline its employees at the time of plaintiff's conviction. Plaintiff asserts federal constitutional claims and state law claims related to his prosecution and conviction.

Discovery began in November 2024. The ASA defendants issued subpoenas to the Cook County Department of Corrections (CCDC) and the Illinois Department of Corrections (IDOC), seeking the "master files" for plaintiff's convicted codefendants. *See* Dkt. 117 at 2 (describing the requests in more detail). Plaintiff filed a motion to quash the subpoenas, Dkt. 89, which the Court construed as a motion for protective order, Dkt. 117. Plaintiff argued that while some prison records may be relevant, the subpoenas were impermissibly broad, and defendants had not articulated the relevance for many of the requested categories of documents. Dkt. 89. The Court agreed and instructed the parties to meet and confer about the scope and relevance of the requested documents. Dkt. 117. The parties have since narrowed the requests, but some disputes remain. As a result, plaintiff filed another motion for protective order, which is now fully briefed. Dkt. 148 (motion); Dkt. 155 (response); Dkt. 164 (reply).

## II. Legal Standard

Under Federal Rule of Civil Procedure 26, a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Relevance focuses on the claims and defenses in the case, not its general subject matter." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Proportionality focuses on the importance of the information sought in resolving the case and whether the burden outweighs the likely benefit. Fed. R. Civ.

P. 26(b)(1); *see also In re Watts Coordinated Pretrial Proc.*, No. 19 C 1717, 2024 WL 3470596, at *4 (N.D. Ill. July 19, 2024).

Rule 26 allows the Court to issue a protective order, limiting discovery to protect a party from embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c)(1). Additionally, a party may seek a protective order to limit discovery from a third party based on the relevance and proportionality limits of Rule 26. *DeLeon-Reyes v. Guevara*, No. 1:18-CV-01028, 2020 WL 3050230, at *3 (N.D. Ill. June 8, 2020). The Court has broad discretion to resolve discovery disputes. *Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357, 365 (7th Cir. 2017).

## III. Analysis

Plaintiff seeks a protective order prohibiting discovery of the following categories of documents from the IDOC: Security Threat Group information, disciplinary reports or adjustments, trust fund accounts, Keep-Separate-From records, and Intelligence Unit gang records. Dkt. 148 at 9. The ASA defendants requested these documents for five of plaintiff's codefendants who also served varying prison sentences in Illinois after being convicted in 1994. Dkt. 155 at 2. In the intervening decades, each codefendant has provided a sworn statement supporting plaintiff's innocence. Defendants doubt the veracity of these statements and seek to explore whether the statements were coordinated or coerced. *Id.* In defendants' view, the disputed subpoena requests are relevant because (1) the Security Threat Group and Intelligence Unit gang information "will shed light on whether [the statements] were coordinated as a result of gang collusion rooted in

3

allegiance and favor or whether they were coordinated through intimidation and threat"; (2) disciplinary reports about codefendants fighting would be "circumstantial evidence of collusion by threat" while reports of bribery would be "circumstantial evidence of collusion by favor"; (3) Keep-Separate-From records "can explain the absence of communication" between codefendants to support "defendants' theory of influence, coercion, or collusion"; and (4) trust-fund accounts could suggest a codefendant received a bribe to make a statement on plaintiff's behalf. *Id.* at 9-12. Defendants' arguments are purely speculative.

Defendants insist that plaintiff's codefendants coordinated their statements about plaintiff's innocence because the affidavits were executed within a few years of each other and contain similar facts. Dkt. 155 at 9, 12. But this alone does not suggest, as defendants presume, that the statements are the result of conspiracy or coercion. While it is in the realm of possibility that a person could entice or force others to write corroborating affidavits, defendants' bare assertion that plaintiff did so here is not enough to justify the discovery requested. *See Bishop v. White*, No. 16 C 6040, 2020 WL 6149567, at *5 (N.D. Ill. Oct. 20, 2020) (rejecting subpoena request for communications between plaintiff and affiant when defendants did not provide support for their theory that plaintiff coerced the affiant to make a statement); *McClendon v. City of Chicago*, 345 F.R.D. 322, 327 (N.D. Ill. 2024) (rejecting request for phone records when defendants' argument was "based almost entirely on the supposition that a hypothetical person" could have discussed his criminal case with

4

someone "without any particularized basis" to believe plaintiff did so in the recordings requested).

Moreover, defendants do not provide any basis to believe evidence of coercion or collusion will be found in the IDOC documents requested. They do not assert, let alone provide evidence, that plaintiff's codefendants maintained active gang membership in prison[1] or posed a documented security threat at any time. They do not supply evidence that the codefendants interacted with one another in violation of prison rules to warrant disciplinary action or keep-separate-orders. And they do not provide a basis for their theory that a codefendant could have been bribed through trust-fund-account transfers. The mere possibility of relevant information existing in the IDOC documents is insufficient to enforce the subpoena requests. *See Cruz v. Guevara*, 801 F. Supp. 3d 767, 781 (N.D. Ill. 2024). "[D]efendants must produce some evidence 'already in hand' to show that the requested [files] probably document something relevant." *Marshall v. City of Chicago*, No. 1:21-CV-00694, 2025 WL 2463038, at *3-4 (N.D. Ill. Aug. 26, 2025) (quoting *Rodriguez v. City of Chicago*, No. 18-CV-7951, 2021 WL 2206164, at *2 (N.D. Ill. June 1, 2021)); *see also Cruz*, 801 F. Supp. 3d at 781 (rejecting discovery request when party "has pointed to nothing" to indicate the discovery sought contained relevant information). Defendants have not done so here. Accordingly, the requests are an impermissible fishing expedition. *See DeLeon-Reyes v. Guevara*, 2020 WL 3050230, at *7.

---

[1] Defendants point out that during plaintiff's criminal trial in 1994, the government presented evidence that each codefendant was a member of a gang. But there is no indication of gang involvement during their incarceration or at the time the codefendants provided the sworn statements, which was over ten years after the trial.

5

Finally, the Court observes that significant discovery remains outstanding. At this point in the case, defendants "need to present a more convincing argument that relevant evidence will be found in [the intelligence unit documents, disciplinary reports, keep-separate-from records, and trust fund accounts] before they will be allowed to 'go fishing' in th[ose] particular pond[s]." *Bishop*, 2020 WL 6149567, at *7. After more written discovery is reviewed, or upon completing certain depositions, defendants may uncover facts that support their theory of coordinated affidavits. If so, defendants may be able to justify the "fishing" sought here and can seek relief from the Court at that time. But for now, the subpoena requests are overly broad and are not proportional to the needs of the case. *Id*.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for protective order, Dkt. 148, is granted. IDOC shall not produce Security Threat Group information, Disciplinary Reports/Adjustments, Trust fund records, Keep-Separate-From ("KSF") forms/records, or Intelligence Unit gang records in response to defendants' subpoenas.

**So Ordered.**

_____
**Jeannice W. Appenteng**
**United States Magistrate Judge**

Date: 2/10/2026

6